UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| LUCY ALEXANDER, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil. No. 3:20-cv-00044-GFVT |
| v. | ) ) | |
| THOMAS B. MILLER, *et al.*, | ) ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendants. | ) ) | **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs Lucy Alexander, Mary Baughman, Robert Moody, Danny Metts, and Randall Roach assert that UK Healthcare and the Kentucky Department of Revenue's billing and collection practices violate the Due Process Clause of the Fourteenth Amendment by failing to provide adequate notice and an opportunity to be heard. Plaintiffs argue that their Fourteenth Amendment rights are enforceable against the Defendants under 42 U.S.C. § 1983, and they seek both a declaratory judgment and injunctive relief prohibiting the Defendants from collecting UK Healthcare debts until class members are provided constitutionally sufficient notice and an opportunity to be heard. Presently before the Court is Plaintiffs' Amended Motion for Class Certification, which Plaintiffs seek on behalf of all former UK Healthcare patients whose bills have been or will be referred by UK Healthcare to the Department of Revenue and who did not request a hearing or independent review of their accounts. For the following reasons, Plaintiffs' Amended Motion for Class Certification will be GRANTED.

**I**

The named Plaintiffs in this matter, Lucy Alexander, Mary Baughman, Robert Moody, Danny Metts, and Randall Roach, are all former UK Healthcare patients whose bills were referred to the Department of Revenue for collection. [R. 1 at 12–44.] The Defendants consist of two University of Kentucky officials and two Department of Revenue officials. *Id.* at 4. The Defendants are all being sued in their official capacities and are charged with having responsibility over UK Healthcare and the Kentucky Department of Revenue's billing and collection practices. *Id.* at 4–5.[1]

Plaintiffs argue that Defendants' debt collection practices violate the Due Process Clause of the Fourteenth Amendment. [R. 1 at 2; R. 32-2 at 7.] Plaintiffs assert that UK Healthcare uses the following tiered system to collect former patient debts: (1) UK Healthcare or the Kentucky Medical Services Foundation, which is the billing arm for UK Healthcare, attempts to collect debt from patients; (2) if UK Healthcare is unsuccessful, it refers further collection efforts to Central Kentucky Management Services; and (3) if CKMS is unsuccessful, it refers collection to the Department of Revenue for non-judicial collection remedies such as bank account levies, wage garnishment, lien placement, and state tax refund offset. [R. 32-2 at 9.] Plaintiffs state that Defendants' debt collection process violates the Fourteenth Amendment because patients do not receive notice at a "meaningful time and in a meaningful manner" during any stage in the process of their right to dispute either the existence or the amount of their debt. *Id.*

---

[1] Defendants asserted in their Answer that Plaintiffs' claims are barred by sovereign immunity. [R. 20 at 3; R. 23 at 1–2.] However, Defendants did not raise the issue of sovereign immunity in their Response to Plaintiffs Motion for Class Certification and so far have not raised any specific immunity arguments. "The Eleventh Amendment is *sui generis* as a jurisdictional issue, having a 'quasi-jurisdictional nature,' one that can be waived or abrogated." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). The Eleventh Amendment is a jurisdictional bar that courts may, but are not required to, raise *sua sponte* at any stage of the litigation. *Id.* Because Defendants have not yet raised any specific immunity arguments or claims, the Court will refrain from addressing immunity until the issue has been more fully addressed by the parties.

Plaintiffs further assert that Defendants have engaged in an intentional effort to hold as few hearings as possible and have in fact tried to conceal patients' hearing rights. *Id.* at 8. As evidence of this phenomenon, Plaintiffs point to the fact that although UK Healthcare debt collectors sent out 63,154 notices between 2013 and 2020, only sixty-five hearings were requested in total and none have been requested in the past two years. *Id.* During that same time frame, only seventeen hearings were actually held, and only one hearing has been held in the past five calendar years combined. *Id.* As further evidence, Plaintiffs point out that Defendant Tammy Watts sent CKMS a letter stating that the initial CKMS invoice was deficient because it failed to inform the debtor of his or her appeal rights. *Id.* at 14. Ms. Watts' letter stated that the invoice "is deficient in that it does not inform the debtor of his/her appeal rights." *Id.* Despite this warning, Plaintiffs allege that neither CKMS nor UK Healthcare have ever modified their initial invoice sent to former UK Healthcare patients based on Ms. Watts' letter.[2] *Id.*

Defendants disagree with the Plaintiffs' characterization of the debt collection process. Defendants contend that Kentucky law authorizes debt referral from state universities (of which UK Healthcare is affiliated) to the Department of Revenue for collection. [R. 35 at 1; R. 36 at 2.] Defendants also argue that the debt collection process, which is the same one that has been used for years by Kentucky's public universities and other state agencies, appropriately informs individuals of how to dispute their medical bills. [R. 35 at 2.] Defendants point to the three-step debt collection process and state that notices are sent to former UK Healthcare patients at each step. [R. 35 at 2–4; R. 36 at 2–5.] Further, Defendants allege that if a debtor does not respond to notices from CKMS, each debtor receives a final notice ("Letter 8") to the debtor's last known

---

[2] Instead of changing the communication to provide notice to former UK Healthcare patients, Plaintiffs point to email correspondence in which UK Healthcare sought to use informal hearing procedures as "our way out." [R. 32-2 at 15.]

address for the following purposes: (1) to inform the debtor of their right to contest the amount

or validity of their debt by requesting a hearing with a Hearing Officer; (2) to provide

instructions for requesting a hearing; (3) to inform the debtor of what information to submit to

the hearing officer, and (4) to inform the debtor that if they do not request a hearing or resolve

the matter in some other way, their debt will be referred to the DOR for collection.  [R. 35 at 2-

3.]

On June 4, 2020, Plaintiffs filed their first Motion to Certify Class.  [R. 2.]  After a period

of discovery, Plaintiffs filed an Amended and Supplemental Motion to Certify Class on October

30, 2020.  [R. 32.]  Both sides having fully briefed the matter, this Amended Motion for Class

Certification is now ripe for review.

## II

## A

As an initial matter, Plaintiffs have requested the Court certify the following class:

> All UK Healthcare patients whose bills have been or will be referred by UK
> Healthcare (or its subsidiaries, including but not limited to KMSF and CKMS) to
> the Department of Revenue for collection and who have not yet satisfied the
> amount the DOR states is owed, but excluding the 158 individuals listed in
> Defendants' Capilouto and Cox's response to Interrogatory 2 as having requested
> a hearing or independent review of their accounts.

[R. 32-2 at 9.]

District courts have broad discretion in deciding whether to certify a proposed class.

*Hicks v. State Farm Fire and Casualty Co.*, 965 F.3d 452, 457 (6th Cir. 2020); *Pipefitters Local

636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011).  This is

because a "class action is 'an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only,'" and is subject to strict requirements under Rule 23

of the Federal Rules of Civil Procedure.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348

4

(2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  To warrant certification, class members must not only satisfy Article III standing requirements, but they must also "satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc)).  "The party seeking class certification has the burden to prove the Rule 23 certification requirements."  *Id.* (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)).  The party opposing certification need not disprove the requirements.  *See id.*

The requirements for standing outlined by Article III of the United States Constitution apply equally to class action lawsuits.  *Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005).  The "irreducible" constitutional minimum of standing contains three elements: an injury in fact, a causal connection, and likely redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  The plaintiff in a suit must have suffered an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (internal citations omitted).  Next, the plaintiff must demonstrate a "causal connection" between this injury and the alleged conduct of the defendant; "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Id.* (internal citations omitted).  Finally, a favorable decision for the plaintiff must likely redress this injury, and relief must be more than merely speculative.  *Id.* at 561.

Plaintiffs seeking the certification of a class must prove two additional components in order to show they have standing to proceed as a class.  The proposed class must be identifiable

5

and unambiguous, and the named representatives must be members of the proposed class. *Pilgrim v. Universal Health Card, LLC*, No. 5:09-cv-879, 2010 WL 1254849, *1 (N.D. Ohio Mar. 25, 2010), aff'd, 660 F.3d 943 (6th Cir. 2011).  In a properly defined class, only members who have standing to file suit in their own right would be included.  *Chaz Concrete Co., LLC v. Codell*, No. 3:03-cv-52-KKC, 2006 WL 2453302, at *6 (E.D. Ky. Aug. 23, 2006).  For that reason, the Court may deem a proposed class overly broad if such a class would incorporate members who neither have suffered harm nor are at risk to suffer such harm at the hands of the defendant.  *Id.* (quoting *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001)).

The Court is not required to inquire into the merits of the case to determine whether a person is a member of a class.  *See Bostick v. St. Jude Med., Inc.*, No. 03-2626 BV, 2004 WL 3313614, *16 (W.D. Tenn. 2004).  Rather "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (quoting 5 James W. Moore, *et al.*, *Moore's Fedreal Practice* § 23.21[3] (Matthew Bender, 3d ed. 1997)).  Plaintiffs, as the party invoking jurisdiction, bear the burden of proof on each requirement for standing.  *Id.*; *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007).

Defendants argue that a portion of the proposed class lacks standing.  [R. 35 at 10.]  The proposed class includes "[a]ll UK Healthcare patients whose bills have or *will be* referred by UK Healthcare . . . to the Department of revenue for collection . . . ."  *Id.* (emphasis added).  Given the "will be" language, Defendants argue that the "will be" portion of the proposed class lacks standing because "their alleged future injury is merely speculative."  [R. 35 at 10.]  However, courts have consistently held that including future class members is permissible.  *See, e.g., Afro*

*Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (holding that a class composed of "current and future minority members of the Toledo Police Department" could proceed as a class action); *Buffkin v. Hooks*, Case No. 1:18CV502, 2019 WL 12827835 (M.D. N.C. Mar. 20, 2019) (granting class certification to "all current and future prisoners in DPS custody who have or will have chronic hepatitis C virus and have not been treated with direct-acting antiviral drugs"); *Hoffer v. Jones*, 323 F.R.D. 694, 697–98 (N.D. Fla. Nov. 17, 2017) (granting class certification for "all current and future prisoners in the custody of the Florida Department of Corrections who have been diagnosed, or will be diagnosed with chronic hepatitis C virus" after finding common questions of law); *Miller v. University of Cincinnati*, 241 F.R.D. 285, 290 (S.D. Ohio 2006) (holding that class definitions that include future class members are permissible under Rule 23(b)(2)). Including future class members "protects [those] who would otherwise have to wait for [a violation] to occur before they seek a post-hoc remedy," and "is precisely what the class action device is designed to prevent." *Roman v. Korson*, 152 F.R.D. 101, 111 (W.D. Mich. 1993). Therefore, Defendants' standing argument is without merit.

Because at this stage any Article III issues in this case are dependent on whether a class is certified, the final determination of standing will be resolved as informed by the class certification requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997). This Court "therefore follow[s] the path" taken by the Supreme Court, "mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'" *Id.* at 613 (quoting 28 U.S.C. § 2072(b)); *see also* Fed. R. Civ. P. 82.

**1**

A prospective class must meet a total of seven independent requirements.  As discussed above, two of these criteria stem from Article III's standing mandates: "an identifiable class must exist, and the definition of the class must be unambiguous, and the named representative must be a member of the class."  *Pilgrim v. Universal Health Card, LLC*, No. 5:09-cv-879, 2010 WL 1254849, *1 (N.D. Ohio Mar. 25, 2010), aff'd, 660 F.3d 943 (6th Cir. 2011) (citations omitted).  The remaining five requirements originate in Rule 23(a) and 23(b):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Finally, "In addition to the prerequisites of Rule 23(a), a party seeking class certification must show that the class action is maintainable under Rule 23(b)."

*Id.* (citations omitted).  There must be a statement of the facts indicating that each requirement of the rule is fulfilled.  *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  *Dukes* verified that the district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion without resolving factual and legal issues.  *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1081 (6th Cir. 1996) (holding that individual proofs, which "vary from plaintiff to plaintiff," do not satisfy Rule 23(a)).  Rather, this Court must "probe behind the pleadings before coming to rest on the certification question."  *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  Class certification is appropriate if a district court finds, after conducting a "rigorous

analysis," that the Rule 23 requirements have been met. *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litigation*, 722 F.3d 838, 851 (6th Cir. 2013) (citing *Dukes*, 564 U.S. at 351).

In determining whether the Rule 23 prerequisites are met, "some inquiry into the merits may be necessary." *Id.* However, district courts should consider "only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied." *Id.* (citing *Amgen Inc. v. Conn. Retirement Plans & Trust Funds,* 568 U.S. 455, 466 (2013)). This means district courts are not permitted to "turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Id.* (quoting *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012)).

**a**

Initially, Rule 23(a)(1) requires a proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A proposed class may satisfy this requirement by demonstrating the impracticality of joinder. *See, e.g., Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 660 (E.D. Mich. 1995) ("The numerosity requirement mandates that the joinder of all plaintiffs be impracticable—not impossible."). There is no magic number or strict test for determining impracticality of joinder. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976). "When class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.11 (3d ed. 2011).

Regardless, in determining practicability, a court should also consider the geographic dispersion of the proposed class, the sophistication of proposed class members, and the reluctance of individual class members to sue. 7A Wright & Miller, *Federal Practice and*

9

*Procedure* § 1762 (3d. ed.); *see also Roman v. Korson*, 152 F.R.D. 101, 105–06 (W.D. Mich. 1993); *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666, 668 (E.D. Ky. 1974). "When a class numbers in the hundreds or thousands, the impracticability of joinder is obvious." *Mich. State Univ. Faculty Ass'n v. Mich. State Univ.*, 93 F.R.D. 54, 56 n. 1 (W.D. Mich. 1981); *see also* Newberg at § 3:12. For that reason, proposed classes with hundreds of members are routinely held to satisfy the numerosity requirement. *Mich. State Univ. Faculty Ass'n*, 93 F.R.D. at 56. In fact, courts have certified classes with as few as eighteen members. *See, e.g., Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) ("We further are of the opinion that eighteen is a sufficiently large number to constitute a class."); *see also Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) ("[W]e are unwilling as a matter of law to hold that a class of 74 persons does not meet the requirement of numerosity."). Some courts hold that "a class of 40 or more members is sufficient to establish numerosity." *Appoloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003). All of this leads to the conclusion that, in determining whether to certify a class, it is not necessary for a court to know the precise number of class members. Rather, the Court may rely upon reasonable inferences drawn from the known facts. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

Plaintiffs assert their proposed class would likely contain thousands of individuals. [R. 32-2 at 25.] UK Healthcare operates four major hospitals and dozens of clinics and other healthcare centers around the Commonwealth. *Id.* As of March 8, 2020, the UK Healthcare system had nearly two million registered patients.[3] *Id.* Furthermore, the Department of Revenue collects unpaid medical bills from tens of thousands of former UK Healthcare patients and has

---

[3] UK Healthcare began referring medical accounts to the Department of Revenue for collection in 2008. [*See* R. 35 at 11.] Therefore, this class is limited to former patients from 2008, when the University began referring accounts to the DOR, onward.

10

collected approximately $76 million from former UK Healthcare patients since 2009. *Id.* The Defendants do not contest Plaintiff's claims of numerosity. Therefore, because the number of potential class members likely reaches into the thousands, and given the geographic dispersion of the potential class members, the Court finds that Plaintiffs have satisfied the numerosity requirement.

**b**

Next, in order for a class to be certified under Rule 23(a)(2), there must be "questions of law or fact common to the class." This is because, where there are common questions of law or fact, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Traditionally, it has been the rule that to satisfy the commonality requirement of Rule 23(a)(2), only one single issue that is common to all members of the class is required, not multiple issues. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996); *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) ("Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class—though that question must be a 'common issue the resolution of which will advance the litigation.'") (quoting *Sprague v. Gen. Motors*, 133 F.3d 388, 397 (6th Cir. 1998)).

The language of commonality "is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions."'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (April 2009)). The essential commonality inquiry, therefore, is not whether common questions exist, "but rather the capacity of a classwide proceeding to generate

common answers apt to drive the resolution of the litigation." *Id.* at 350 (quoting *Nagareda*, supra, at 132). Dissimilarities between members of the proposed class can potentially impede the satisfaction of this requirement. *Id.* Indeed, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id.* at 349–50 (quoting *Falcon*, 457 U.S. at 157).

Defendants make several arguments that Plaintiffs have failed to present a common question of law or fact. First, Defendants argue that "examples of the lack of commonality abound" and that "individual issues predominate over classwide issues." [R. 35 at 7; R. 36 at 6.] Defendants also argue that the class, as currently defined, would include former patients who received actual notice of their right to request a hearing and declined to do so and individuals who received different types of notices. [R. 35 at 7, 11.] Defendants argue that Plaintiffs received different versions of "Letter 8," and because of this, class Plaintiffs are not common to one another or the class as a whole. [R. 35 at 11.] However, none of Defendants' contentions are fatal to Plaintiffs' request for class certification.

The fact that particular circumstances may differ from one class member to the next does not inherently damage the prospects of the proposed class, so long as one question that is common to the class exists and class members suffered the same injury. *See Dukes*, 564 U.S. at 349–50; *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996). Plaintiffs contend that there are at least three distinct issues of law and fact, any one of which a favorable answer would entitle all members of the class to injunctive relief:

1. Whether, under *Matthews v. Eldridge*, 424 U.S. 319 (1976) and given the circumstances of this case, the DOR may undertake administrative levies without providing notice and an opportunity to contest the debt at the DOR level, regardless of what happened at the UK Healthcare level;
2. Whether any version of the "Letter 8," including the most recent version, satisfied the requirement of *Hamby v. Neel*, 368 F.3d 549, 561–62 (6th Cir. 2004), that a due-

process-compliant notice inform the recipient of the consequences of not appealing; and

3. Whether any version of "Letter 8," including the most recent version, was sent at such a time, and in such a manner, as to comply with the "meaningful time" and "meaningful manner" requirements of *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).[4]

[R. 40 at 5.]

The Court is persuaded that a favorable answer to any of these three distinct legal questions would entitle all proposed class members to injunctive relief. In their response, although Defendants failed to respond to or address Plaintiffs' contention that *Eldridge* provides Plaintiffs a right to a hearing at the DOR level, Defendants do argue that commonality is inappropriate because class members received different notices, and some class members participated in UK's Financial Assistance Program while others did not. [R. 35 at 8, 12.] However, these issues do not defeat the commonality requirement because resolution of the above classwide issues in no way depends on the specific notice that a particular Plaintiff received or whether he or she tried to participate in UK's Financial Assistance Program.[5]

Defendants also argue that individual issues "predominate over classwide issues." [R. 35 at 7.] However, whether individual issues "predominate over classwide issues" is not the appropriate inquiry in this case. [*See* R. 40 at 8.] While predominance is a required component of Rule 23(b)(3), Plaintiffs have only moved for class certification under Rule 23(b)(2), which

---

[4] In Plaintiffs' initial Memorandum of Law in Support of their Amended and Supplemental Motion for Class Certification, Plaintiffs identified eleven alleged common questions of law or fact, or that at least "ha[d] the potential to drive the resolution of this litigation." [R. 32-2 at 26–27.] However, as Defendants correctly point out, several of Plaintiffs' original questions pertain to UK Healthcare's Financial Assistance Program or debt collection that are not applicable to the entire class. [R. 35 at 8–9.] In their Reply, Plaintiffs boil down their common questions of law or fact to the three issues listed above, which are common to the class as a whole. [R. 40 at 5.]

[5] In their Reply, Plaintiffs acknowledge that "not every class member is asserting loss of the ability to participate in the Financial Assistance Program ("FAP")." [R. 40 at 13.] However, "[t]his is a thicket the Court need not enter at this time" because class certification in no way hinges on whether or not Plaintiffs were attempting to participate in the FAP. *Id.*

does not require predominance analysis.[6]  *See Dukes*, 564 U.S. at 359.  Further, Rule 23(a)(2)

only requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P.

23(a)(2).

Defendants further argue that the proposed class would also include former patients "who

received actual notice of their right to request a hearing and declined to request one."  [R. 35 at

7.]  However, Defendants' only support for this argument is a single declaration in which one

former UK Health patient stated that "it [was] possible that [he] did not see 'Letter 8' when it

was sent to [him]."[7]  [R. 35 at 7.]  In addition, even if certain class members did receive notice,

the common question of whether the notice was constitutionally sufficient still applies to all class

members.  *See Wal-Mart*, 564 U.S. at 359 (holding that even a single common question satisfies

the commonality requirement).  Furthermore, even if it is true that most class members received

proper and adequate notice as Defendants contend, "[they] should welcome class certification"

because they could "obtain a judgment binding all class members."  *In re Whirlpool Corp.*, 722

F.3d at 857.

Finally, Defendant's contention that the proposed class is too broad because it includes

class members who received different versions of "Letter 8" over the years is without merit.

Defendant's "Letter 8" argument is analogous to *In re Whirlpool Corp.* in which Whirlpool

contended that the certified class was too broad because it included class members who bought a

wide variety of different Whirlpool washing machine models over a multi-year period.  772 F.3d

at 854.  The Sixth Circuit disagreed with Whirlpool and affirmed certification of the class

---

[6] Although Section IV of the Department of Revenue's brief argues that Rule 23(b)(3) does not support Plaintiffs' Motion for Class Certification [*see* R. 36 at 11–13], there is no need for the Court to address those arguments because Plaintiffs never moved for class certification under Rule 23(b)(3), only 23(b)(2).  [*See* R. 40 at 8.]

[7] Elsewhere in their Response, Defendants argue that three of the named Plaintiffs concede that they "may have received Letter 8 and simply did not bother to read it."  [R. 35 at 17.]  However, even if this is true, the argument still does not destroy the commonality requirement.

because common questions relevant to the various models and designs of the machines still applied. *Id.* Similarly, despite the fact that Defendants have relied on different "Letter 8" versions over the years, common questions, such as whether any of the notices complied with *Fuentes*' "meaningful time" and "meaningful manner" requirements, exist across the various versions. [R. 40 at 5.] Plaintiffs' claims present the same questions of law that are relevant to all proposed class members, and therefore, the Court finds that the commonality element has been met.

**c**

Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." This requirement seeks to ensure that the interests of the named representatives align with the interests of the members of the proposed class. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). A named plaintiff's claim is typical if the claim arises from the same practice, event, or course of conduct giving rise to the other class members' claims, and if all claims are based on the same legal theory. *Id.* Although the class representatives' claims must be typical, "Rule 23 does not require absolute homogeneity." *Tucker v. Union Underwear Co., Inc.*, 144 F.R.D. 325, 329 (W.D. Ky. 1992). Rather, "Rule 23(a)(3) typicality 'determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). The inquiry focuses special attention on "differences between class representative claims and class claims that would defeat the representative nature of the class action." *Van Vels v. Premier Athletic Center of Plainfield, Inc.*, 182 F.R.D. 500, 510 (W.D. Mich. 1998) (citations omitted).

15

Plaintiffs assert that all claims for each named member of the class "arise from the same unconstitutional conduct of the Defendants," and that Defendants' common scheme causes all putative class members to suffer a direct injury (loss of property). [R. 32-2 at 33.] Defendants argue that Plaintiffs' typicality argument fails for three reasons: (1) the proposed class includes a significant number of former patients whose claims are barred by the statute of limitations; (2) the named Plaintiffs allege and argue issues related to the FAP, which is a program that not all class members are eligible for or could raise on their own; and (3) some class members voluntarily entered into payment plans with the DOR while others were subject to DOR collection activity. [R. 35 at 13.] These arguments, however, do not destroy typicality.

Turning first to the statute of limitations, § 1983 actions in Kentucky are generally subject to a one-year statute of limitations pursuant to Kentucky Revised Statutes § 413.140(1)(a). *McCord v. Board of Education of Fleming County*, 2018 WL 1724560, at *3 (6th Cir. Jan. 30, 2018); *see also Collard v. Ky. Bd. Of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). This is because the Supreme Court has held that § 1983 actions should be characterized as tort actions as to recovery of damages for personal injury and that district courts "must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought." *Guba v. Huron County*, 600 F. App'x 374, 379 (6th Cir. 2015) (quoting *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007)).

However, the continuing violation doctrine permits district courts to "consider as timely all relevant violations 'including those that would otherwise be time[-]barred.'" *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)). A continuous violation exists if: (1) the defendant's wrongful conduct continues after the precipitating event that began the pattern; (2)

16

injury to the plaintiff continues to accrue after that event; and (3) further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct. *Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999).  The doctrine applies to a "'cumulative violation' caused by a 'continuing course of misconduct.'"  *Guba*, 600 F. App'x at 380 (quoting *Sta-Rite Indus. v. Franklin Elec. Co., Inc.*, 519 F. App'x 370, 381 (6th Cir. 2013)).  The Sixth Circuit recognizes two categories of continuing violations: (1) "where the plaintiff can show prior [wrongful] activity that continues into the present," and (2) "where the plaintiff can show a longstanding and demonstrable policy of discrimination."  *Bowerman v. Int. Union, United Automobile, Aerospace and Agricultural Implement Workers of Am.*, 646 F.3d 360, 366 (6th Cir. 2011) (quoting *Bell v. Ohio State Univ.*, 352 F.3d 240, 247 (6th Cir. 2003)).

Although the doctrine is generally applied to discrimination cases and is less often applied to § 1983 actions, there are circumstances in which the doctrine is appropriate in the § 1983 context.  *See generally Guba*, 600 F. App'x at 380 (reversing district court's holding and applying the continuous violation doctrine to Plaintiffs' § 1983 claim where Defendants continuously failed to register Plaintiffs' child support order correctly or handle Plaintiffs' case properly); *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) (holding that the continuous violation applied to Plaintiffs' § 1983 claim where Plaintiff trucking company was barred from driving its trucks on certain roads on an ongoing basis, thus depriving the Plaintiff of its constitutional rights every day).  "A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within [the statute of limitations period]."  *Kuhnle Brothers, Inc.* 103 F.3d at 522.

Plaintiffs argue that in this case, the first category of the continuing violation doctrine applies because Defendants "are engaging in an ongoing violation of class members' due process rights." [R. 32-2 at 34.]  Defendants respond that the continuing violation doctrine is not applicable because the doctrine is seldom applied to the § 1983 context and the "ongoing effects of an initial violation are not by themselves sufficient."[8]  [R. 35 at 15.]

The Court finds that the continuous violation doctrine is applicable to Plaintiffs' case. Here, Plaintiffs argue that Defendants' failure to inform former patients of their right to a hearing has continued since 2008; class members have consistently and continuously been deprived of their due process rights of notice and an opportunity to be heard; and further injury to Plaintiffs would be avoided if Defendants had appropriately informed Plaintiffs of their right to a hearing. *See Tolbert*, 172 F.3d at 940.

As discussed above, Defendant Tammy Watts sent CKMS a letter in late 2015 or early 2016 stating that the initial CKMS invoice was deficient because it failed to inform former UK Healthcare patients of their appeal rights.  [R. 32-2 at 14.]  Plaintiffs aver that neither CKMS nor UK Healthcare have modified their initial invoices based on Ms. Watts' letter and were instead looking for a "way out."  *Id.* at 14–15.  Further, although UK Healthcare debt collectors sent out 63,154 notices between 2013 and 2020, only sixty-five hearings were requested and only seventeen hearings were actually held.  *Id.* at 8.  That is a return rate of approximately one-tenth of one percent, and Plaintiffs argue this demonstrates two things: (1) that the vast majority of proposed class members were unaware that they had a right to a hearing; and (2) Defendants

---

[8] For support, Defendants point to *McGinnis v. Central Kentucky Mgmt. Servs.*, 2019 WL 5190887 (E.D. Ky. Oct. 15, 2019).  However, while instructive, *McGinnis* is not binding on this Court.  Furthermore, in *McGinnis*, the Plaintiff offered "no valid basis for [the continuing violation doctrine's] application in this matter."  *Id.*  Here, however, Plaintiffs make several valid arguments to support application of the continuing violation doctrine.

have failed to provide proposed class members with constitutionally sufficient notice and an opportunity to be heard.  [R. 40 at 21–22.]

Plaintiffs have alleged facts that Defendants have failed to properly inform former patients of their right to a hearing and the consequences of not requesting a hearing, and this has resulted in a cumulative violation that is caused by a "continuing course of misconduct." *Guba*, 600 F. App'x at 380.  Therefore, the Court finds that the continuing violation doctrine is appropriate here and Plaintiffs' claims are not barred by the statute of limitations.[9]

Defendants next argue that the named Plaintiffs are not typical of the proposed class because not all proposed class members were eligible for or participated in the Financial Assistance Program.  [R. 35 at 17.]  This argument is not fatal to Plaintiffs' proposed class, however, because, as discussed above "[n]o separate relief is sought with respect to the FAP." *Id.* at 24.  Plaintiffs acknowledge that "not every class member is asserting loss of the ability to participate in the Financial Assistance Program ("FAP")," but "[t]his is a thicket the Court need not enter at this time" because class certification in no way hinges on whether or not Plaintiffs were attempting to participate in the FAP.  [R. 40 at 13.]  Therefore, Defendant's argument fails.

Finally, under the typicality prong, Defendants argue that some class members voluntarily entered into payment plans with the DOR while others were subject to DOR collection activity.  Therefore, Defendants argue, because proposed class members have different payment situations, they are not typical of each other.  *Id.*  Defendants also argue that "entry into a voluntary payment plan is not a 'deprivation' of a protected property interest."  *Id.* at 19. However, these arguments are not fatal to Plaintiffs' proposed class.  Despite the factual differences identified by Defendants between the proposed class members, the typicality

---

[9] Because the continuous violation doctrine is applicable in this case, the Court need not address Plaintiffs' fraudulent concealment argument as an alternative to satisfy the statute of limitations. [R. 32-2 at 35.]

requirement is satisfied when there is a common legal element.  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).  Here, the common legal element is whether or not class members were provided with appropriate and timely notice and an opportunity to be heard regarding their right to appeal, and that does not change regardless of a class members' eventual participation or lack of participation in a payment plan.  Therefore, this argument does not stand, and the Court finds that Plaintiffs have satisfied the typicality requirement.

**d**

Finally, Rule 23(a)(4) allows a class to be certified only if "the representative parties will fairly and adequately protect the interests of the class."  This is an essential prerequisite for due process, as a final judgment in a class action binds all class members.  *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)).  This circuit applies a two-part test for determining the adequacy of representation.  First, the named representatives "must have common interests with the unnamed members of the class," and second, it must be apparent that the named representatives "will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976).  This "adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."  *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083.

Plaintiffs argue that both prongs are clearly satisfied, and while Defendants agree that Plaintiffs' counsel are qualified to represent the class,[10] they argue that the named Plaintiffs do not adequately represent the class.  [R. 35 at 19.]  Defendants' one-paragraph argument, which

---

[10] District Court Judge Aleta Trauger of the Middle District of Tennessee recently referred to two of Plaintiffs' attorneys, Ms. Wilner and Mr. Krugman, as "seasoned civil rights litigators."  *Thomas v. Long*, 2020 WL 5530232, at *5 (M.D. Tenn. Sept. 15, 2020).

does not identify shortcomings with any particular class representative, hinges on the fact that since the commonality and typicality requirements of Rule 23 are not met, "this requirement is not met either." *Id.* at 20.

However, as analyzed above, the Court has found that the named class members do in fact satisfy the commonality and typicality requirements of Rule 23.  The class representatives, just like the other proposed class members, are all former patients at UK Healthcare who had bills that were referred by UK Healthcare to the Department of Revenue for collection and have not yet satisfied the amount the DOR states is owed.  [R. 32-2 at 19–23.]  The class representatives also all allege that they did not receive adequate notice of their right to a hearing, in violation of their due process rights.  *Id.*  The Court is persuaded that the adequate representation requirement is satisfied because the named Plaintiffs have "interests [that] are co-extensive [with] rather than antagonistic to, [those of] the unnamed class members." *Kinder v. Nw. Bank*, 278 F.R.D. 176, 184 (W.D. Mich. 2011).  Defendants do not contest the adequacy of Plaintiffs' counsel, and the Court finds Plaintiffs have met the requirements under Rule 23(a)(4). Therefore, the four requirements of Rule 23(a) are met, and the Court will now address Rule 23(b).

## 2

Plaintiffs seek certification under Rule 23(b)(2).  [R. 32-2 at 41.]  A proposed class that meets the Rule 23(a) requirements satisfies 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) applies exclusively in cases when class members seek the same declaratory or injunctive relief and do not assert individualized claims for damages.  *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011).  Generally, claims for monetary relief are

inappropriate under Rule 23(b)(2).  *Id.*; *see also id.* at 363 ("Rule 23(b)(2) 'does not extend to

cases in which the appropriate final relief relates exclusively or predominantly to money

damages'" (quoting Fed. R. Civ. P. 23, Advisory Committee's Note to 1966 Amendment, 39

F.R.D. 69, 102 (1966))).  Rather, "'[c]ivil rights cases against parties charged with unlawful,

class-based discrimination are prime examples' of what (b)(2) is meant to capture."  *Id.* at 361

(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  Rule 23(b)(2) "reflects a

series of decisions involving challenges to racial segregation—conduct that was remedied by a

single classwide order."  *Id.*  "In none of the cases cited by the Advisory Committee as examples

of (b)(2)'s antecedents did the plaintiffs combine any claim for individualized relief with their

classwide injunction."  *Id.* (citing Advisory Committee's Note, 39 F.R.D. at 102).  This is

because permission to combine individualized and classwide relief within a single Rule 23(b)(2)

class is inconsistent with the structure of Rule 23(b)."  *Id.*

　　　The named Plaintiffs in this case have only asserted claims for injunctive and declaratory

relief, not monetary damages.  [R. 32-2 at 42.]  In arguing against certification under Rule

23(b)(2), Defendants raise no new arguments and merely restate the arguments they made under

Rule 23(a) that Plaintiffs have raised issues that are not applicable to the class as a whole.  [R. 35

at 20; R. 36 at 10–11.]  Defendants state that issues related to some class members' participation

in the financial assistant program and the issue of payment plans precludes classwide

certification.  [R. 35 at 20–21.]  The Court previously addressed Defendants' arguments and

need not do so again here.  The defining characteristic of a Rule 23(b)(2) class is "the

homogeneity of the interests of the members of the class."  *Romberio v. UnumProvident Corp.*

385 F. App'x 423, 432 (6th Cir. 2009).  Here, the Court finds that the interests of the proposed

class members—notice and an opportunity to be heard—are homogeneous because the issue of notice and the opportunity to be heard applies to all proposed class members, and injunctive or declaratory relief is also appropriate for the class as a whole. *See* Fed. R. Civ. P. 23(b)(2). Therefore, the Court finds that class certification is proper under 23(b)(2).[11]

## III

After conducting a rigorous analysis, the Court determines that class certification is appropriate here because all requirements under Federal Rule of Civil Procedure 23 have been established. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiffs' Motion to Certify Class **[R. 2]** is **DENIED AS MOOT**;

2. Plaintiffs' Amended and Supplemental Motion to Certify Class **[R. 32]** is **GRANTED**;

3. The Court **CERTIFIES** a class defined as "all UK Healthcare patients whose bills have been or will be referred by UK Healthcare (or its subsidiaries, including but not limited to KMSF and CKMS) to the Department of Revenue for collection and who have not yet satisfied the amount the DOR states is owed, but excluding the 158 individuals listed in Defendants' Capilouto and Cox's response to Interrogatory 2 as having requested a hearing or independent review of their accounts;"

---

[11] Plaintiffs assert that a single injunction is possible and appropriate here. [R. 40 at 26.] However, if it is true, based on further discovery that separate relief and possible subclasses are necessary, Plaintiffs state they will seek an amendment at that time. *Id.*

4.   Plaintiff Lucy Alexander, Plaintiff Mary Baughman, Plaintiff Robert Moody, Plaintiff Danny Metts, and Plaintiff Randall Roach **SHALL SERVE** as class representatives; and

5.   Ben Carter, attorney from the Kentucky Equal Justice Center, and Edward P. Krugman and Claudia Wilner, attorneys from the National Center for Law and Economic Justice, are **APPOINTED** as class council.

This the 23rd day of March, 2021.

Gregory F. Van Tatenhove
United States District Judge