UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ALEXANDER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:20-cv-00044-GFVT-EBA |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| MILLER, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a motion to dismiss filed by Defendants Eli Capilouto and Penny Cox . [R. 127.]  Plaintiff Lucy Alexander, along with four other representatives of a class, alleges that Dr. Capilouto and Ms. Cox, in their official capacities as President and Treasurer of the University of Kentucky, violated her Fourteenth Amendment right to Due Process.[1]  UK Healthcare referred medical debt incurred by Ms. Alexander to the Kentucky Department of Revenue for collection.  Allegedly, the Department wielded the power of the Commonwealth to collect without providing a meaningful opportunity for Ms. Alexander to dispute the debt.  The Kentucky General Assembly recently ended the practice, and Dr. Capilouto argues that the case is moot.  By contrast, Ms. Alexander believes that the Court could still offer her meaningful relief.  Because none of Ms. Alexander's new requests can proceed, she cannot avoid Dr. Capilouto's assertion that this litigation is moot, the motion to dismiss **[R. 127]** is **GRANTED**, and this case is dismissed without prejudice.

---

[1] For ease of reference, this Opinion uses Dr. Capilouto as a placeholder for both UK defendants and Ms. Alexander in the same capacity for the representative plaintiffs and class members.

**I**

This litigation stems from debt collections performed by the Kentucky Department of Revenue on UK Healthcare's behalf, beginning in 2008.  [R. 1; R. 151 at 11.]  Ms. Alexander and the class allege that UK designed its collection practices to avoid disputes on outstanding accounts and to conceal the consequences of failure to pay.[2]  [*See generally* R. 134.]  When a patient failed to pay, collection proceeded through three phases.  *Id.* at 12.  First, UK Healthcare, itself, solicited payment on a standard form invoice.  *Id.* at 12–13.  Ms. Alexander alleges these forms did not advise patients that they could appeal or seek a hearing regarding the validity or amount of the debt.  *Id.* at 13.  Also, she claims the documents did not advise the patients that failure to pay on time could impact their eligibility to participate in UK Healthcare's Financial Assistance Program.  *Id.* at 14.

That program offered discounts to lower income households based on the federal poverty level.  [R. 151 at 5.]  Families earning less than three-hundred-percent of the federal poverty level received a one-hundred-percent discount.  *Id.*  Those earning between three-hundred-one-percent and five-hundred-percent of the poverty level received an eighty-percent-discount, and so on.  *Id.*

If UK did not manage to elicit payment on an account within one-hundred-twenty days, Central Kentucky Management Services, a UK Healthcare subsidiary, took over.  [R. 134 at 13 & n.5; R. 151 at 6.]  Upon referral to CKMS, accounts were no longer eligible for UK's financial assistance program.  [R. 151 at 6.]  CKMS would continue using standard forms that, Ms. Alexander claims, failed to advise the patients of any right to dispute the debt before a neutral

---

[2] For the purposes of this jurisdictional motion, the Court takes Ms. Alexander's allegations as true.  *See infra* Section II.A.  UK disputes Ms. Alexander's characterization of the opportunity to contest the debt at each stage of collection.  [*See generally* R. 151.]

2

arbiter.  [R. 134 at 14.]  The only review process was allegedly internal and led back to continued collection.  *Id.*; [R. 151 at 8.]  Unlike a typical bill collector, the ultimate result of a debtor's time with CKMS was not a day in court.  [*See* R. 134 at 14.]

Instead, CKMS sent the accounts to the Department of Revenue.  *Id.*  Without giving the patients an opportunity for a hearing regarding the debt, the Department used the administrative tools of the state to directly satisfy the outstanding balances.  The Department seized bank accounts, garnished wages, and placed liens on real property.  *Id.* at 14 & n.7.  At best, the Department referred patients who attempted to dispute the debt back to CKMS.  *Id.* at 15.  At worst, the Department told them hearings were not an option.  *Id.*

Referral to the Department had financial consequences for the accountholders.  The Department added a twenty-five percent fee to the principal amount of every debt that UK Healthcare referred to it.  *Id.* at 21.  Thereafter, the Department applied eighty percent of every dollar it seized to the principal amount and credited twenty percent toward its collection fee.  *Id.*

Additionally, Ms. Alexander claims that the Department coerced the patients to enter into a payment plan.  *Id.* at 22.  Facing seizure of their assets, patients had two options.  *See id.* at 23.  Pay in full.  *Id.*  Or agree to a plan.  *Id.*  If they chose the payment plan, they had to sign a statement that "[b]y executing the payment agreement you have acknowledged that the debts are due and owing."  [R. 134 at 51.]

In March 2020, UK stopped referring new accounts to the Department for collection.  [R. 151 at 15–16.]  On June 4, Ms. Alexander and her fellow class representatives sued, claiming that the defendants violated their Fourteenth Amendment right to due process under color of state law, in violation of 42 U.S.C. § 1983.  [R. 1 at 46.]  She asked the Court to enter an injunction preventing the Department of Revenue from collecting UK Healthcare's debts until they

3

implemented a procedure to provide notice and opportunity to dispute the validity of the debts. *Id.* at 47.

The parties proceeded to litigate certification of the putative class.  [R. 2; R. 32; R. 36; R. 40.]  Ultimately, the Court certified the following class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure:

> [A]ll UK Healthcare patients whose bills have been or will be referred by UK Healthcare (or its subsidiaries, including but not limited to KMSF and CKMS) to the Department of Revenue for collection and who have not yet satisfied the amount the DOR states is owed, but excluding the 158 individuals listed in Defendants' Capilouto and Cox's response to Interrogatory 2 as having requested a hearing or independent review of their accounts[.]

[R. 46 at 23.]  In doing so, the Court relied upon Ms. Alexander's claim that she was not seeking relief related to the financial assistance program.  *Id.* at 19.  After proceeding through discovery, the parties filed cross-motions for summary judgment in March of 2022.  [R. 88; R. 92.]

In April 2022, the Kentucky General Assembly passed House Bill 8.  2022 Ky. Acts 1889–1981.  The bill revised the statute that enabled the Department of Revenue to collect debt on behalf of state agencies.  *See* 2022 Ky. Acts 1930; Ky. Rev. Stat. Ann. § 131.130(11) (West 2023).  Specifically, the new law removed the authority for the Department of Revenue to collect accounts from UK Healthcare's patients.  2022 Ky. Acts 1931 ("The department may enter into annual memoranda of agreement with any state agency . . . to assume the collection duties for any debts due the state entity, except for consumer debt owed for health care goods and services . . .").

Dr. Capilouto then filed the instant motion to dismiss, arguing that this litigation is moot. [R. 127.]  The parties also filed renewed motions for summary judgment.  [R. 133; R. 151.] Recognizing that her request for injunctive relief is now moot, Ms. Alexander's renewed motion for summary judgment asks for three forms of declaratory relief and two categories of related

notice relief.  [R. 133-1 at 2–3.]  The Court agreed to consider the briefing on the summary judgment motions in reviewing the motion to dismiss.  [R. 171 at 2.]  The matter is fully briefed and ripe for review.

## II

Dr. Capilouto brings his motion under Rules 12(b)(1) and 12(h)(3), which challenge the existence of subject matter jurisdiction.  A challenge to subject matter jurisdiction may be brought at any time during a proceeding.  *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002).  Motions to dismiss based on a lack of subject matter jurisdiction take two forms. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A facial attack merely questions the sufficiency of the pleadings set forth in the complaint to support jurisdiction.  *Id.*  On the other hand, a factual attack raises a factual controversy that challenges the predicate basis for jurisdiction.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)*.*

The instant motion goes well beyond the face of the complaint.  Dr. Capilouto asks the Court to consider an intervening revision to Kentucky law, a change in the billing practices that underly the complaint, and revised relief sought by Ms. Alexander.  [R. 127.]  It is, therefore, far afield from a facial challenge to jurisdiction.  But the motion is also unlike the typical factual attack.  Factual attacks generally require a district court to "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction."  *Global Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 805 F.3d 806, 810 (6th Cir. 2015).  Neither Dr. Capilouto nor Ms. Alexander dispute the truth of the new facts relevant to this case, meaning there is nothing for the Court to weigh.

Instead, this motion triggers a hybrid role discussed by the Fifth Circuit.  Some motions that challenge subject matter jurisdiction simply ask the Court to consider "the complaint

supplemented by undisputed facts evidenced in the record." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). Because the parties do not ask the Court to weigh any evidence in support of disputed facts, it can assume the plaintiffs' allegations to be true. *Id.* Given the posture of the instant motion, which focuses on the continued viability of Ms. Alexander's claims in light of new, undisputed developments, this framework is instructive. The Court will consider Ms. Alexander's allegations regarding her due process claim to be true and assess whether they can move forward after the Department of Revenue ceased collecting UK Healthcare's debts.

## A

This litigation has lost its constitutionally necessary character. Article III of the United States Constitution limits federal courts to hearing "Cases" and "Controversies." U.S. Const. art. III, § 2. This jurisdictional requirement persists throughout the pendency of a proceeding. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). A federal court loses jurisdiction over a litigation if, at any point, it "has 'lost its character as a present, live controversy.'" *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969)). Federal courts employ three doctrines to keep themselves "'within their constitutional bounds': standing, mootness, and ripeness." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019) (quoting *Brown v. Buhman*, 822 F.3d 1151, 1168 (10th Cir. 2016)); *accord Platt v. Bd. of Comm'rs on Grievances and Discipline*, 769 F.3d 447, 451–53 (6th Cir. 2014).

Generally, to have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial opinion." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The analysis is slightly different for claims for violations of procedural rights. *Parsons v. U.S. DOJ*, 801 F.3d 701, 712 (6th Cir. 2015). The plaintiff does not have to satisfy the redressability requirement.

6

*Id.*  Instead, she need merely show that she (1) has been accorded a procedural right (2) to protect her concrete interests.  *Id.* (citing *Lujan*, 504 U.S. at 572 n.7).  But the plaintiff must show that her concrete injury resulted from some disregarded procedural requirement.  *Id.*

To suffer an injury in fact, "the plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc.*, 578 U.S. 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  To be particularized, the injury must affect the plaintiff in a distinct, personal, and individual way.  *Id.*  A concrete injury is one that is "*de facto*," meaning that "it must actually exist" and is not "abstract."  *Id.* at 340.

Mootness is standing set in time.  *Prison Legal News*, 944 F.3d at 879.  It "ensures that the plaintiff's stake in the outcome of the case remains personal."  *Platt*, 769 F.3d at 452.  A case becomes moot if "events occur during the pendency of a litigation which render the court unable to render the requested relief . . . ."  *Demis*, 558 F.3d at 508 (quoting *Abela v. Martin*, 309 F.3d 338, 343 (6th Cir. 2002) (internal citations and quotations marks omitted)).  This can occur where "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the litigation" or where "the issues presented are no longer 'live . . . .'"  *Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 931 (6th Cir. 2017) (quoting *Demis*, 558 F.3d at 512 and *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016)).  The test is "whether the relief sought would, if granted, make a difference to the legal interests of the parties."  *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 458 (6th Cir. 2004) (quoting *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003)).

However, "a case is moot only where no effective relief for the alleged violation can be given."  *Id.*  "[A] case becomes moot only when subsequent events make it absolutely clear that

the allegedly wrongful behavior cannot reasonably be expected to recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530–31 (6th Cir. 2001) (quoting *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)).  To find a live controversy, a court need not inquire into the ultimate merits of a claim.  *See Fed. Prison Indus.*, 365 F.3d at 460.  A court only needs to conclude that it possesses the power to afford effectual relief.  *Id.*

Finally, ripeness "prevents courts from hearing premature or abstract disagreements." *Platt*, 769 F.3d at 451.  The traditional doctrine of ripeness has both prudential and constitutional elements.  *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014).  The constitutional aspects ensure that proper standing exists.  *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014)).  "A claim is unripe when it 'is anchored in future events that may not occur as anticipated or at all.'"  *Jackson v. City of Cleveland*, 925 F.3d 793, 807 (6th Cir. 2019).

**B**

Ms. Alexander's claims directed at the discontinued collection efforts by the Department of Revenue are moot.  Dr. Capilouto believes that this litigation is either moot or no longer ripe. [R. 127 at 5; R. 138 at 6 n.22.]  Originally, Ms. Alexander sought "an injunction prohibiting Defendants from collecting UK Healthcare debts until such time as the [Department of Revenue] provides class members accurate and constitutionally adequate notice and an opportunity to be heard."  [R. 1 at 47.]

Ms. Alexander concedes that her request for an injunction against the Department of Revenue is moot.  [R. 132 at 11.]  She also concedes that the aspects of her claims related to the Department are not reasonably likely to recur.  *Id.*  Instead, Ms. Alexander argues that the Court retains power to affect the legal interests of the class members via new requests for declaratory

8

relief.  *Id.*  Under the collateral consequences doctrine, "a 'collateral' injury survives that can be remedied by [the] court even though the primary injury may have been resolved."  *E.E.O.C. v. Fed. Exp. Corp.*, 558 F.3d 842, 847 (6th Cir. 2009).  The collateral injury must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.*

Ms. Alexander is correct, to an extent.  The absence of the Department of Revenue, alone, does not render this case moot.  "[F]ederal courts possess broad discretion to fashion equitable remedies."  *Fed. Prison Indus.*, 365 F.3d at 460.  Because Ms. Alexander remains subject to collection of the debt by UK, a judgment in her favor could continue to affect her legal rights, meaning this litigation is not moot under the traditional test.  *Fed. Prison Indus.*, 365 F.3d at 458 (defining the test as "whether the relief sought would, if granted make a difference to the legal interests of the parties"); *see also Rice v. Vill. of Johnstown*, 30 F.4th 584, 591 (6th Cir. 2022) (explaining that, generally, if a procedural requirement connects to the plaintiff's economic interests, she has a cognizable injury-in-fact).

The deeper question, however, is whether Ms. Alexander's new requests are validly before the Court in their own right.  Standing must be assessed relative to each claim for relief. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008) ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.").  Therefore, the Court will assess Ms. Alexander's new requests for declaratory relief and then consider her desire for notice relief.

## C

None of Ms. Alexander's three requests for declaratory relief can proceed.  Assuming that UK will resume debt collection, Ms. Alexander asks the Court to take various prophylactic measures to prevent the problems with the Department of Revenue's collection efforts from

reoccurring. [*See* R. 132 at 7 ("Plaintiffs and the Class Members face the possibility that UKH will sue them to collect the debts it alleges they owe.").] Ms. Alexander seeks a declaration that UK must adjust the class member's accounts "by providing full credit against the alleged debt for all amounts paid to [the Department of Revenue], regardless of how much [the Department] purported to allocate to the 25% fee it charged . . . ." [R. 133-1 at 2 (citing 28 U.S.C. § 2201).] She also asks for a declaration that would prohibit UK from "offer[ing] into evidence any [Department of Revenue] payment plan entered into by the Class Member" in a future collection lawsuit. *Id.* Last, Ms. Alexander asks the Court to preserve the ability of class members "to defend such suit . . . on the basis of a wrongful denial of financial assistance . . . ." *Id.* at 3.

The declaratory judgment act does not enlarge the fundamental jurisdiction of the federal courts. *Brennan v. Rhodes*, 423 F.2d 706, 706–07 (6th Cir. 1970). The case and controversy requirement remains. *Id.* "[D]eclaratory judgment actions often require courts to face the difficult task of distinguishing 'between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies.'" *Fed. Prison Indus.*, 365 F.3d at 458 (quoting *Kardules v. City of Columbus*, 95 F.3d 1335, 1343–44 (6th Cir. 1996)). "Thus, the Supreme Court has held that when considering the potential mootness of a claim for declaratory relief, 'the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."'" *Id.* at 459 (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (quoting *Maryland Cas. Co v. Pacific Coal & Oil Co.*, 312 U.S. 270, 275 (1941))). Moreover, courts distinguish between allegations of past versus ongoing or future harm. *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 406 (6th Cir. 2019).

10

"Past harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief." *Id.*

Ms. Alexander faces a Faustian choice.  Her original injury stemmed from UK and the Department of Revenue's alleged failure to provide notice and an opportunity to contest her debt before seizing her assets.  [*See generally* R. 1.]  Given the change in Kentucky law, the parties agree that this potential mechanism for seizing funds is no longer available.  Accordingly, reliance on this past harm does not permit Ms. Alexander to seek declaratory relief. *Kanuszewski*, 927 F.3d at 406.  Worse, UK argues that any continued relief based on that alleged harm would violate the Eleventh Amendment.  [R. 127 at 10.]  Ms. Alexander cannot receive declaratory relief to any extent her injury in fact is premised only on issues with the process used by the Department of Revenue.

Understandably, Ms. Alexander focuses on the alternative: UK's ongoing efforts to collect.  But this option is also problematic.  Without the powers of the Department of Revenue, it is unclear that UK can continue to deprive her of any property without going to court.  These ongoing harm claims have not developed sufficiently to show what process Ms. Alexander might receive before UK can continue to reach into her pocketbook.  Accordingly, they present separate concerns regarding her ability to demonstrate an injury in fact.

**1**

Ms. Alexander's request for a declaration that UK must credit her account for money paid towards the Department of Revenue's collection fees is not ripe.  As a Section 1983 action for a violation of procedural due process, this litigation claims a special type of harm. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  The deprivation of property is not the core injury. *Id.*  The due

process clause does not absolutely preclude the Government from taking one's property. *See Carey v. Piphus*, 435 U.S. 247, 259 (1978).

Instead, it is the lack of process and the accompanying risk that the Government will seize property without justification that motivate procedural due process claims. *See Zinermon*, 494 U.S. at 125 ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)); *Carey*, 435 U.S. at 259 ("Procedural due process rules are meant to protect persons not from deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."). Thus, the constitutional injury is "not complete unless and until the State fails to provide due process." *Zinermon*, 494 U.S. at 126. To review these claims, courts need to be able to consider "what process the State provided," "the procedural safeguards built into the statutory or administrative procedure effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Id.*

Ms. Alexander lacks standing to receive her desired declaration that the twenty-five-percent fee is invalid because she is no longer subject to a deprivation of property without process. Recall that Ms. Alexander complains that the Department of Revenue applied twenty percent of every dollar she paid toward its fee rather than her principal balance. Her requested declaration would require UK to limit her debt moving forward as though every dollar she paid the Department went entirely towards her principal balance. Accepting Ms. Alexander's arguments as true, her ongoing injury is that UK may continue to bill her for an erroneously high principal balance.

Unfortunately, an erroneously high bill, alone, is not a deprivation without process. *Jones v. Clark Cnty.*, 666 F. App'x 483, 486 (6th Cir. 2016). Bills are not an example of the state confiscating or converting property. *Id.* They do not reach into the debtor's pockets. *Id.* A bill is merely the first portion of the quintessential requirements of due process: notice. *See id.* at 487. "The billed party . . . still possesses and owns the money until some further process is imposed upon him." *Id.* at 486. "Even if the process of billing and receiving partial payment could be thought of as a deprivation of a property interest, such a deprivation is inherently protected by process." *Id.* The Government must still file a civil action to get paid. *Id.*

Without the powers of the Department of Revenue, UK cannot continue to deprive Ms. Alexander of any property without further process. UK can no longer seize her assets by administrative fiat. Instead, Ms. Alexander is concerned that UK will sue her to collect. [*See* R. 132 at 7.]

But speculation that UK may eventually sue gives the Court little to nothing to chew on. What are the procedural safeguards that Ms. Alexander believes would be absent in a state court litigation? *See Zinermon*, 494 U.S. at 126. Does Ms. Alexander believe that a state court would be unable to correct any issues with her account balance? Or that a Kentucky state court would refuse to consider her arguments regarding due process? *Contra Pub. Serv. Com. v. Wycoff Co.*, 344 U.S. 237, 247–48 (1952) ("State courts are bound equally with the federal courts by the Federal Constitution and laws. Ultimate recourse may be had to [the United States Supreme Court] by certiorari if a state court has allegedly denied a federal right."). Simply put, Ms. Alexander's concerns regarding continuing collections via state court litigation are too speculative to confer standing for her desired declaration regarding the twenty-five-percent fee. *See Kanuszewski*, 927 F.3d 405–06 (explaining that ongoing or future harm only provides

13

standing where "there is a 'substantial risk' that the harm will occur" and that "'[a]llegations of *possible* future injury' are not sufficient." (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5, 409 (2013)).

**2**

Ms. Alexander's request for relief relating to the allegedly coerced payment plans is either moot or ineligible for a declaratory judgment. Ms. Alexander's proposed declaration would prevent UK from offering "into evidence any . . . payment plan entered into by the Class Member in a future collection lawsuit." [R. 133-1 at 3.] Ms. Alexander asserts that the Court can ameliorate the ongoing effects of her endorsement of the statement that "[b]y executing the payment agreement you have acknowledged that the debts are due and owing." [R. 134 at 51.] Ms. Alexander is concerned that this statement could be offered into evidence against her in future state court litigation. But her proposal to ameliorate this ongoing effect fails for two reasons.

**a**

First, the request relates primarily to past activity. None of the class members are subject to further collections by the Department of Revenue, meaning that they are no longer paying into these plans. Because the claim relates to past behavior, declaratory relief is presumptively unavailable. *Kanuszewski*, 927 F.3d at 406.

Against this, Ms. Alexander argues that there are ongoing ramifications of these plans, citing *Coalition for Government Procurement v. Federal Prison Industries, Inc.*, 365 F.3d 435 (6th Cir. 2004). [R. 132 at 13.] In that case, Federal Prison Industries, a government agency, used inmate labor to produce office furniture that competed with private manufacturers. *See Fed. Prison Indus.*, 365 F.3d at 442. The private producers sued, arguing that the level of

14

expansion into the market that occurred between 1991–1995 violated the agency's organic statute.  *See id.* at 459.  In 1996, the agency's board reauthorized expansion, which potentially mooted the issues with the prior expansion.  *See id.*

But the injurious activity, the expanded market participation by the prisons, remained ongoing.  *See id.*  Indeed, the board used data from the 1991–1995 expansion to justify the 1996 reauthorization.  *Id.*  Thus, the issues with the 1991–1995 expansion "potentially impact[ed] [the agency's] current production levels."  *Id.*  The proposed relief did more than request a declaration that the prior activity was unlawful.  *See id.* at 459–60.  The declaration regarding the validity of the 1991–1995 expansion could have required the agency to decrease its current production level.  *See id.* at 460.

By contrast, the injurious activity in this case, the coerced payment plans, has ceased.  A declaration from the Court will have no effect on the Department of Revenue moving forward.  The Department is out of the private healthcare collections business entirely, and Ms. Alexander has not indicated that UK can require the Plaintiffs to continue paying into the payment plans.  Ms. Alexander's concerns about the payment plans relate to their evidentiary value in future litigation.  A declaration that UK cannot introduce these plans into evidence could affect future litigation strategy but would not require UK to alter its current behavior.  *C.f. Fed. Prison Indus.*, 365 F.3d at 460 (explaining that the declaratory relief would require the agency to replace lost sales volume).  The link between Ms. Alexander's requested declaration and UK's ongoing behavior is far more attenuated than the requested relief in *Federal Prison Industries*.

**b**

Second, federal courts are hesitant to issue declaratory relief whose primary value is precedential effect in future lawsuits.  *See Green v. Mansour*, 474 U.S. 64, 72–73 (1985).

15

Declaratory relief to be used as res judicata can disrespect the role of state courts in our system of federalism. *See id.* at 73. The Sixth Circuit applies a five-factor test to weigh these risks. Courts consider (1) whether the requested declaratory relief would resolve the controversy in the parallel proceeding, (2) whether the declaration would serve a useful purpose in clarifying the legal relations in issue, (3) whether the request is brought "merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata,'" (4) whether the declaration would "increase friction between our federal and state courts and improperly encroach upon state jurisdiction," and (5) whether there is a better or more effective alternative remedy. *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

**i**

Two of these factors favor issuing a declaratory judgment regarding the payment plans. The declaration would clarify the issue of whether the plans were, in fact, coerced and whether they offended the due process clause. So, the declaration would be useful as to the legal issues moving forward.

Additionally, a declaratory judgment regarding the payment plans would not increase the friction between federal and state courts. This factor requires the Court to consider concerns rooted in our system of federalism. *See W. World Ins. Co. v. Hoey*, 773 F.3d 755, 761 (6th Cir. 2014). Three subfactors guide the analysis: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether the factual and legal issues are more closely related to "state law and/or public policy" or "federal common or statutory law . . . ." *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co.*, 29 F. 4th 792, 799 (6th Cir. 2022).

The first subfactor considers whether the federal court would benefit from the state court's resolution of any factual disputes.  *See id.*  Here, the parties have developed an extensive record.  The payment plans are part of the collection efforts by the Department of Revenue, which has been the focus of the case.  There is no need for any state litigation to resolve facts related to Ms. Alexander's due process concerns.

Likewise, the final two subfactors support exercising jurisdiction.  The second subfactor disfavors federal jurisdiction where the issues implicate novel or difficult questions of state law. *See id.*  And the third subfactor asks whether any important areas of state concern are implicated. *See id.*  There is little reason to think that a state court would be in a better position to evaluate whether the payment plans offend the due process clause.  The matter is purely federal.

### ii

The remaining factors preclude issuing the requested relief.  The allegedly coerced admission that the debt is valid would not, on its own, resolve future collection lawsuits against the class members.  [*See* R. 155 at 13 (admitting that "[t]he declarations sought here would not settle the entire controversy . . . .").]  The admission would be one piece of evidence to weigh regarding the validity of the debt.  Moreover, the due process clause is not the only means that the class members can use to impeach the evidentiary value of the statement.  For example, Kentucky courts do not enforce waivers made involuntarily.  *See Banis v. Commonwealth*, No. 2014-SC-00127-MR, 2016 WL 5239649, at *2 (Ky. Sept. 22, 2016).  Ms. Alexander asks the Court to rule on the availability of a defense in state court.  [*See* R. 133-1 at 2.]  Any such ruling would stop well short of resolving the overall lawsuits.

The pursuit of procedural fencing also weighs against issuing a declaratory judgment. *See Grand Trunk*, 746 F.2d at 326.  This factor allows the Court discretion to consider "'a range

17

of tactics that courts regard as unfair or unseemly,' including selecting a forum to start a race for res judicata." *Cardinal Health*, 29 F. 4th at 797 (quoting *Hoey*, 773 F.3d at 761). Primarily, the disfavor towards procedural fencing is meant to preclude jurisdiction for plaintiffs who file in advance of an underlying coercive suit to "seize litigations from state courts merely because one party, normally a defendant, goes to federal court to begin his . . . defense before the state court begins the case under state law." *AmSouth Bank v. Dale*, 386 F.3d 763, 775 (6th Cir. 2004) (quoting *Wycoff*, 344 U.S. at 248); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008). This factor usually does not bear heavily in the analysis. *See id.* At best, the absence of procedural fencing is neutral; at worst, it favors a finding that a declaratory judgment would be inappropriate. *See Scottsdale Ins.*, 513 F.3d at 797–98.

Ms. Alexander argues that there is no procedural fencing at issue because "UKH has yet to sue Class Members on the alleged debts" and she began this litigation long ago. [R. 155 at 14.] The fact that the collection actions are not yet before the state court is not dispositive. *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 565 (6th Cir. 2006). Instead, these matters appear to be inevitably heading to state court for resolution, which can be an indication of procedural fencing. *See id.*

Moreover, the length of this litigation's pendency does not cut in the direction that Ms. Alexander claims. Ms. Alexander's original request for relief, an injunction against collection by the Department of Revenue, was not specifically tailored to the payment plans. [*See* R. 1 at 47.] Ms. Alexander raised her request related to the plans only after the change in law and the specter of state court suits arose. So, Ms. Alexander's pursuit of a declaration in federal court came closer in time to the potential state court litigation than she alleges. [*See* R. 155 at 14.]

Ultimately, the primary purpose of Ms. Alexander's request is to bind state courts in future collection actions. This naked pursuit of precedent will do little more than gratuitously interfere "with the orderly and comprehensive disposition of state court litigation." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942). The procedural fencing factor weighs against jurisdiction.

Finally, Ms. Alexander has an alternative, if not better, remedy available to her. She can simply raise these arguments in any state court collection action. As explained, state courts are equally bound to uphold the federal constitution. *Wycoff*, 344 U.S. at 247–48. And a failure to correctly apply the due process clause could be appealed to the United States Supreme Court. *Id.* The availability of a forum to fully resolve the claims indicates the presence of an alternative remedy that is better or more effective. *See Grand Trunk*, 746 F.2d at 326–27.

### c

To any extent that Ms. Alexander's request for a declaration regarding the payment plans focusses on harm that occurred while the Department of Revenue enforced them, that is in the past, and the claim for relief is moot. Alternatively, Ms. Alexander's concerns about the use of the payment plans in state court would be better raised before the state judge. Accordingly, the request for declaratory relief regarding the payment plans is both moot and inappropriate.

### 3

Unlike the previous two requests, Ms. Alexander's desired declaration that the class members can defend a collection lawsuit "on the basis of wrongful denial of financial assistance" is neither moot nor unripe.[3] [R. 133-1 at 3.] Regardless, Ms. Alexander waived any claim related to financial assistance and cannot revive it to avoid the overall mootness of this litigation.

---

[3] However, several of the concerns regarding the propriety of declaratory relief targeted at future state litigation apply equally to this request. *See supra* Section II.C.2.b.

**a**

Unlike the twenty-five-percent fee, the record answers the questions that the Court needs to review Ms. Alexander's request regarding the financial assistance program.  To have standing to press a procedural due process claim, a plaintiff must show that she (1) has been accorded a procedural right (2) to protect her concrete interests.  *Parsons*, 801 F.3d at 712.  For the purposes of this motion to dismiss, the Court assumes that the Plaintiffs have a cognizable property interest in entitlement to financial assistance.  *See Fed. Prison Indus.*, 365 F.3d at 460 (no need to consider the ultimate merits of a claim to rule on mootness).

She also has developed a full record of the process afforded to the Plaintiffs regarding financial assistance.  Unlike collection of the debt itself, UK admits the process afforded to denials of financial assistance "ends before an account goes to collections internally at the University, and long before any account is referred to the DOR for collection." [R. 151 at 39.] Thus, the procedural protections, and any deficiencies therewith, depend on the form invoices sent out by UK prior to referring accounts to CKMS.  [*See* R. 134 at 12–14.]  As to this request for relief, Ms. Alexander has alleged specific deficiencies with the process that she believes merit relief.  This provides the Court with a procedural injury to review, meaning the claims are ripe. *See Zinermon*, 494 U.S. at 126.

The request is also not moot.  UK argues "that declaratory relief 'to establish a precedent that could make a difference in [a] new lawsuit' is an insufficient controversy to avoid mootness." [R. 138 at 6 (quoting *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006)).]  UK ignores an important caveat from its cited case.  The better statement of law would be that a declaration to serve as precedent does not overcome mootness "unless there is a 'link between

[UK's] past practices and the current interests of the parties.'" *Ford*, 469 F.3d at 504 (quoting *Fed. Prison Indus.*, 365 F.3d at 459).

Here, UK's decision to deny Ms. Alexander eligibility for the financial aid program is similar to the ongoing injury discussed in *Federal Prison Industries*.  The financial assistance program allowed a reduction to the total amount owed by a patient based on her income.  [*See* R. 151 at 5.]  The denial will continue to impact the Plaintiffs' amount of debt moving forward.  To the extent that Ms. Alexander can show a cognizable property interest in being eligible for financial assistance, UK's alleged unconstitutional behavior continues to have effects sufficient to confer standing.  *C.f.*, *Fed. Prison Indus.*, 365 F.3d at 459–60 (holding that claims based on agency's allegedly unlawful expansion of economic activity were not moot where the expansion continued to impact the plaintiffs' sales).

**b**

Although Ms. Alexander's claims regarding denial of eligibility for the financial assistance program are neither moot nor unripe, she repeatedly waived the availability of relief regarding financial assistance.  To receive summary judgment on a claim not pleaded in the original complaint, a plaintiff must amend the complaint to give the defendant notice.  *Naples v. Lowellville Police Dep't*, 125 F. App'x 636, 644 (6th Cir. 2005).  A new claim cannot be raised for the first time in a motion for summary judgment.  *Id.*  And an attempt to amend the complaint through briefing in support of or opposition to summary judgment is ineffective.  *Id.*; *Kinsey v. Ohio*, No. 2:17-cv-982, 2020 U.S. Dist. LEXIS 38207, at *10–11 (S.D. Ohio Mar. 5, 2020); *accord Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014) (collecting cases).

21

While the Federal Rules of Civil Procedure allow for liberal pleading, the considerations change once discovery has commenced. *See Gilmour*, 382 F.3d at 1315. "Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." *Id.* Through the course of discovery, parties tailor their litigation strategy to develop the claims and defenses for which they have notice. *See Guiffre v. Local Lodge No. 1124, United Steelworkers of Am.*, No. 90-3540, 1991 U.S. App. LEXIS 17698, at *14 (6th Cir. July 24, 1991). Without notice, a party has no reason to seek discovery to develop a defense. *See id.* For this reason, a plaintiff cannot raise a new claim at the summary judgment stage to survive dismissal without first receiving leave to amend his complaint. *See Naples*, 125 F. App'x at 644 (affirming dismissal of due process claim where plaintiff raised a liberty interest theory for the first time in response to a motion for summary judgment); *Kinsey*, 2020 U.S. Dist. LEXIS 38207, at *11 (dismissing *Monell* claim raised for the first time to survive summary judgment).

This logic applies with equal force to new forms of relief raised to avoid mootness. *See Youngstown Publ'g Co. v. McKelvey*, 189 F. App'x 402, 407 (6th Cir. 2006). Where, as a tactical matter, the complaint confined its requested relief to an injunction, courts are reluctant to permit an eleventh-hour change to avoid mootness. *See id.* (citing *Harris v. City of Houston*, 151 F.3d 186, 191 (5th Cir. 1998)). Indeed, general requests for relief, such as boilerplate pleading for "such other relief as the Court deems just and proper," bear "close inspection" when used to switch from injunctive relief to damages late in the case to avoid mootness. *See id.* at 408 (citing *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 71 (1997); *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 141–42 (2d Cir. 1994), *cert. denied*, 515 U.S. 1169 (1995)).

Close inspection is fatal to Ms. Alexander's request for relief regarding the financial assistance programs. While the complaint pleads facts related to denial of eligibility for the program, there is no specific request for relief based on financial assistance. [*See generally* R. 1.] Only two of the prayers for relief conceivably cover it. Ms. Alexander asks that the Court "[d]eclare that Defendants have violated Named Plaintiffs' rights . . . under the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.* at 47. She also includes a boilerplate request for the Court to "[e]nter an order awarding such other and further relief as the Court deems just and proper." *Id.*

Whatever notice these pleadings could have provided Dr. Capilouto, Ms. Alexander destroyed it by repeatedly disavowing any claim for relief related to financial assistance. At the class certification phase of this case, one issue focused on UK's financial assistance program. Because not all the class members qualified for the program in the first place, UK argued that the proposed class lacked sufficient commonality of fact to proceed. [R. 35 at 17–18.] Ms. Alexander, for example, did not assert a denial of eligibility under the financial assistance program. [R. 40 at 13 & n.9.] To avoid this argument, the Plaintiffs conceded that "no separate relief is currently sought with respect to the FAP." *Id.* at 14. They claimed to only seek injunctive relief to pause the Department of Revenue's collection activities. *Id.* If they were to ever seek relief related to the financial assistance program, the Plaintiffs promised to amend the pleadings on or before the deadline to do so on "March 2, 2021." *Id.*

They did not. The Court certified the class and relied on the Plaintiffs' claim that they were not seeking relief related to the financial assistance program. [R. 46 at 19.] After proceeding through discovery, the parties filed cross-motions for summary judgment in March of 2022. [R. 88; R. 92.] Despite their failure to amend the complaint before the deadline to do so,

the Plaintiffs included several requests for relief related to the financial assistance program.  [R. 92-1 at 3–4.]  One item asked the Court to order UK to submit a plan to reform the financial assistance program "so that UK Healthcare's patient-debtors can apply, get a determination of eligibility for financial assistance, and receive notice of their right to appeal any determination and be heard before a neutral arbiter."  *Id.* at 4.  UK cried foul and claimed that the Plaintiffs had waived any claims related to the FAP.  [R. 88 at 33.]  The Plaintiffs then amended their motion for summary judgment to exclude the requirement that UK reform its financial aid procedures.  [R. 102-1 at 4.]  They also again confirmed that "there is no separate claim for relief" regarding the financial assistance program.  [R. 108 at 30.]

In April 2022, the Kentucky General Assembly passed House Bill 8.  2022 Ky. Acts 1889–1981.  Dr. Capilouto then filed the instant motion to dismiss, arguing that this litigation is moot.  [R. 127.]  The parties also filed renewed motions for summary judgment.  [R. 133; R. 151.]  And once again, the Plaintiffs are asking for relief related to the financial assistance program.  [R. 133-1 at 2.]

The Court will not permit the Plaintiffs to pursue this relief to avoid the overall case becoming moot.  The Complaint did not specifically indicate that Ms. Alexander would pursue relief related to the financial assistance program.  [*See generally* R. 1.]  Ms. Alexander never provided UK with notice that this claim was at play by amending the complaint.  *See Naples*, 125 F. App'x at 644.  If anything, Ms. Alexander compounded the issue by repeatedly affirming that she would not seek that relief.  UK relied on those statements in building a litigation strategy during discovery.  *See Guiffre*, 1991 U.S. App. LEXIS 17698, at *14.  Permitting a last-minute switch in the form of relief to avoid mootness is, therefore, unduly prejudicial to UK and will not be allowed.  *See McKelvey*, 189 F. App'x at 407.

24

**D**

Having determined that Ms. Alexander's three requests for declaratory relief will be dismissed, her two applications for notice relief must also be denied.  Ms. Alexander asks the Court, in order "[t]o effectuate the foregoing declaratory relief," to require UK to provide debtors with "plain language notice setting forth the substance of" the requested declaratory relief.  [R. 133-1 at 3.]  Ms. Alexander also asks that UK provide the debtors "with a full and complete set of the creditor's records . . . concerning the alleged debt."  *Id.*

A request that a defendant notify third parties of their rights is not an independent form of relief.  *Green*, 474 U.S. at 70–71.  Notice relief is ancillary to an injunction or declaration.  *Id.*  Accordingly, where "there is no continuing violation of federal law to enjoin . . . notice relief cannot be justified . . . ."  *Id.* at 72; *see also Mosley v. Hairston*, 920 F.2d 409, 417 (6th Cir. 1990) (summarizing cases subsequent to *Green*).  The dismissal of Ms. Alexander's requests for declaratory relief necessitates dismissal of the notice relief.

**III**

In sum, Ms. Alexander's three requests for declaratory relief are either moot, unripe, or waived.  Without a viable declaratory claim, her applications to require notice also must be dismissed.  This leaves only the original injunctive relief that Ms. Alexander sought against the Department of Revenue.  As she admits, that claim is moot.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1.  Dr. Capilouto and Ms. Cox's Motion to Dismiss **[R. 127]** is **GRANTED**;

2.  All remaining claims are **DISMISSED** without prejudice as moot;

3.  All pending motions are **DENIED** as moot; and

4.  This matter is **STRICKEN** from the Court's active docket.

25

This the 28th day of September, 2023.

Gregory F. Van Tatenhove
United States District Judge